**GAF CORPORATION, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, et al., Defendants.**

Civ. A. No. 78–0461.

United States District Court, District of Columbia.

Dec. 7, 1982.

Robert E. O'Malley, Covington & Burling, Washington, D.C., for plaintiff.

Laidler B. Mackall, Washington, D.C., for defendants.

JACKSON, District Judge.

MEMORANDUM AND ORDER

This case is once more before this Court on remand from the U.S. Court of Appeals for this circuit to determine, in accordance with its opinion of September 3, 1981,[1] the appropriate amount of the attorneys' fees to be awarded to defendant Transamerica Insurance Company ("Transamerica") which must be paid by plaintiff GAF Corporation ("GAF"), and the amount of interest, if any, to be allowed thereon.[2]

---

1. *GAF Corporation v. Transamerica Insurance Co.,* 665 F.2d 364 (D.C.Cir.1981).

2. On December 4, 1979, this Court awarded $37,258.75 in attorneys' fees and $1,579.43 in costs as a "term and condition" of a Fed.R. Civ.P. 41(a)(2) voluntary dismissal. The Court of Appeals ordered a recomputation of the amount, while affirming the award itself, to include only the cost of the "work product . . . rendered useless by the dismissal." 665 F.2d at 369–70.

The history of the litigation is set forth in the Court of Appeals' opinion. For present purposes it needs only to be observed that this case commenced March 17, 1978, as one of the early declaratory judgment actions by a onetime asbestos manufacturer against three comprehensive general liability insurers to establish rights with respect to the defense of and indemnity for multiple claims for personal injuries arising out of protracted exposure to asbestos products.[3] Transamerica retained the law firm of Steptoe & Johnson ("Steptoe"), and, specifically, one of its senior partners, Laidler B. Mackall, to defend it.

GAF alleged that one of Transamerica's predecessors had insured a GAF subsidiary, which had formerly manufactured asbestos products, during the years 1951 through 1953 when some of the injured claimants had been exposed to the substance. Although there was evidence that a specific CGL policy had been issued, GAF was never able to produce the policy, and Transamerica disclaimed knowledge of its predecessor's having written such coverage. Until the case was voluntarily dismissed by GAF over Transamerica's vigorous objection on February 12, 1979,[4] GAF and Transamerica were at issue over whether the latter had ever insured the former and, if so, what were the terms and conditions of the coverage. They were also, all the while, contemplating the consequences for themselves, in terms of the potential liability for asbestos-caused diseases presented by the underlying claims, should the risk of loss be shifted or not by the outcome of the suit, which explains in part the effort expended by both parties.

The Court of Appeals remanded to this Court with directions to determine by how much, if at all, the amount of attorneys' fees and costs previously awarded should be reduced for "expenses incurred in preparing work product that will be useful in the ongoing litigation in California." 665 F.2d at 369.

> If it develops on hearing that the work of counsel in the District of Columbia case is of no value in the subsequent litigation, then the $39,000 award should be maintained, but the award should be reduced for any other work. *Id.* at 370.

The parties are in apparent agreement that the period for which attorneys' fees may be awarded begins March 18, 1978, and ends February 12, 1979, and does not include work done in connection with the two appellate proceedings in this circuit to date;[5] that fees were charged by Steptoe to Transamerica at fair and reasonable hourly rates for the personnel involved; and that the time expended upon the various tasks (which were themselves appropriate) was not disproportionate to their complexity.[6]

Steptoe's services on Transamerica's behalf are itemized in "Exhibit 1" to Mr. Mackall's affidavit of November 27, 1979, in support of the original application for attorneys' fees. They correlate closely with the docket sheet which is "Exhibit 3" to the

---

**3.** *See,* generally, *Keene Corporation v. Insurance Co. of North America,* 513 F.Supp. 47, *on appeal,* 667 F.2d 1034 (D.C.Cir.1981) *cert. denied* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982).

**4.** GAF sought voluntary dismissal because its failure to join yet another carrier who might be indispensable could not be remedied without destroying diversity jurisdiction. GAF intended to, and did, refile in another forum. (At one time or another the parties were litigating some of the same issues in the District of Columbia, New Jersey, Virginia, and California). At the time GAF moved to dismiss, Transamerica had substantially completed work on a motion for summary judgment on the ground of the absence of proof of the terms of any contract of insurance between the parties. It subsequently filed its motion, in conjunction with its opposition to GAF's motion to dismiss, which was denied by the Court when it permitted the voluntary dismissal.

**5.** Transamerica submits that it paid Steptoe $38,052.75 in attorneys' fees for representation in this Court through March 14, 1979, when the Court denied its motion for reconsideration of the dismissal order, and concedes that $3,445 should be deducted from the award as representing post-February 12th time.

**6.** They also agree that Transamerica is entitled to recover out-of-pocket expenses of $1,579.43.

affidavit. Those which fall within the inclusive dates are as follows:

|    |                                                                                                                                                              | Hours |
| -- | ------------------------------------------------------------------------------------------------------------------------------------------------------------ | ----- |
| 1. | Telephone conference with client; review of complaint, GAF's first request for production of documents.                                                       | 3     |
| 2. | Legal research on insurance coverage issues, "occurrence" of bodily injury where inhalation of asbestos fibers occurs which subsequently causes disease.       | 10    |
| 3. | Arrangement of stipulation extending time to respond to complaint.                                                                                            | .75   |
| 4. | Research on jurisdictional and venue issues.                                                                                                                  | 4     |
| 5. | Research on declaratory judgment requirements of an "actual controversy."                                                                                     | 5     |
| 6. | Research on legal authorities regarding protective order staying discovery on other issues until there has been proof of the existence and terms of the policies sued upon. | 4     |
| 7. | Preparation of motion for security for costs.                                                                                                                 | 1     |
| 8. | Preparation of motion for protective order and/or extension of time in which to respond to complaint and GAF's discovery requests.                            | 8     |
| 9. | Preparation of affidavits in support of motion for summary judgment, with statement of material facts as to which there is no genuine issue.                   | 21    |
| 10. | Preparation of motion for summary judgment including legal research on issues regarding (1) actual controversy, (2) burden of proof.                          | 58    |
| 11. | Review of answer of defendant INA.                                                                                                                           | 1     |
| 12. | Review of answer of defendant Firemen's Fund.                                                                                                                | 1     |
| 13. | Review of response of INA to GAF's first request for production of documents.                                                                                | .5    |
| 14. | Review of response of Fireman's Fund to GAF's first request for production of documents.                                                                     | 1     |
| 15. | Preparation of Transamerica response and objections to GAF's first request for production of documents.                                                      | 8     |
| 16. | Arrangement of stipulation for extension of time for GAF to respond to motion for summary judgment.                                                          | 5     |
| 17. | Review of GAF opposition to motion for summary judgment; legal research on addi-                                                                             |       |

|     |                                                                                                                                                                 | Hours |
| --- | --------------------------------------------------------------------------------------------------------------------------------------------------------------- | ----- |
|     | tional issues presented and consultation with client on claimed factual issues.                                                                                | 10.75 |
| 18. | Preparation of reply to GAF's opposition to Transamerica's motion for summary judgment.                                                                        | 6     |
| 19. | Review of INA motion to dismiss for lack of indispensable party.                                                                                               | 2     |
| 20. | Research on issues presented by INA motion to dismiss for lack of indispensable party, including possibility of joining Home Ins. Co. as a third-party defendant in this action. | 17    |
| 21. | Review of INA's first request for production of documents to GAF.                                                                                              | 1     |
| 22. | Review of GAF motion for voluntary dismissal.                                                                                                                  | 2     |
| 23. | Research on issues presented by GAF motion for voluntary dismissal                                                                                             | 9.25  |
| 24. | Preparation of opposition to INA motion to dismiss.                                                                                                            | 6.75  |
| 25. | Preparation of opposition to GAF motion to dismiss.                                                                                                            | 18    |
| 26. | Review of order granting GAF motion to dismiss and preparation of motion for reconsideration.                                                                  | 6     |
| 27. | Review of GAF and INA oppositions to motion for reconsideration.                                                                                               | 2     |
| 28. | Preparation of reply to GAF's opposition to Transamerica's motion for reconsideration.                                                                         | 9.75  |
| 29. | Preparation for oral argument on pending motions (Transamerica motion for summary judgment; GAF motion for voluntary dismissal; INA motion to dismiss for lack of indispensable party). | 24.5  |
| 30. | Preparation of additional exhibits in support of motion for summary judgment.                                                                                  | 18    |
| 31. | Attendance at oral argument on pending motions; prepare Order and detailed report to client.                                                                   | 13.25 |
| 32. | Preparation of post-argument supplemental memorandum in support of motion for summary judgment.                                                                | 16.25 |
| 33. | Review of INA and GAF supplemental memoranda in support of dismissal.                                                                                          | 2     |
| 34. | Preparation of reply to GAF and INA supplemental memoranda.                                                                                                    | 5.25  |

GAF concedes items nos. 3, 4, 7, 16, 22, 23, 25, 27, 28, 33, and 34, aggregating 54.5 hours. It disputes items nos. 1, 2, 5, 6, 8, 9, 10, 15, 17, 18, 26, 29, 30, 31 and 32, aggregating 211.75 hours, as being "useful elsewhere" (which Transamerica admits only as to item no. 9's 21 hours) and items nos. 11, 12, 13, 14, 19, 20, and 21, aggregating 23.5 hours, as related to the activities of "[an]other party" and, thus, not attributable to the defense of GAF's claim. GAF also disputes items 20 and 24 as "untimely."

■ The "other party" objection is untenable. Not only is such a category not mentioned by the Court of Appeals as subject to disallowance, experienced counsel know that no multi-party lawsuit can be prosecuted or defended while remaining oblivious to how co-parties are proceeding and responding appropriately. Rights can be lost and advantage sacrificed as surely by a failure to react to a co-party's initiatives as by inaction with respect to a nominal adversary. Those activities undertaken by Steptoe upon receipt of the initial pleadings filed by Transamerica's co-defendants, their responses to discovery requests, and one co-defendant's own dispositive motion which precipitated the harm which ultimately came to pass, i.e., an inconclusive dismissal to be followed by a reinstitution of the suit in what might be a less hospitable forum for Transamerica under more propitious circumstances for GAF, were clearly necessary to the defense of its client here. An appropriate amount for items nos. 11–14 and 19–21 in their entirety will be allowed.

The "untimely" objection is similarly without merit. Transamerica's opposition to the co-defendant's motion to dismiss was neither rejected nor stricken, and was obviously considered by the Court in conjunction with the proceedings leading up to GAF's voluntary dismissal. Items nos. 20 and 24 will also be allowed.

It is impossible to determine just how much of Steptoe's summary judgment

scholarship was borrowed by Transamerica's California counsel for his demurrer to GAF's complaint in the Los Angeles County Superior Court. Steptoe's motion papers in this action were apparently attached as an exhibit, as were the affidavits of Messrs. Tackach, Kopp, Bowling, Silver, Fladseth, Heard, and Pond. But the Demurrer itself, filed as an exhibit to Transamerica's Memorandum here, is devoted primarily to a discussion of California law which required independent research by California counsel to uncover.

■ No formal discovery was undertaken by either GAF or Transamerica (other than plaintiff's first request for production of documents to which Transamerica devoted eight hours in preparing a response and objection) which could be beneficial in the California action. No testimony was taken which could be preserved, or facts found or law declared to be given *res judicata* effect there. Very little of a tangible nature from this lawsuit seems to be salvageable in a form which would be of utility in another action to either party. The Court finds that items nos. 1, 2, 5, 6, 8, 10, 15, 17, 18, 26, 29, 30, 31, and 32, i.e., all objected to as "useful elsewhere" except the affidavits, are unlikely to be and have not been so used, and are, in fact, uniquely pertinent to this action alone. They will also be allowed.

Therefore, subtracting the amounts conceded by Transamerica, viz., $3,445 for post-February 12, 1979, time (calculated by using Steptoe's maximum hourly rate for 1979) and $2,310 for item no. 9, the affidavits in support of Transamerica's motion for summary judgment which were filed *verbatim* in support of the California demurrer (similarly calculated using the 1978 maximum hourly rate), from the attorneys' fee award previously made of $37,258.75, the Court finds Transamerica entitled to attorneys' fees in the amount of $31,503.75, plus costs of $1,579.43.[7]

7. If the Court has misapprehended the Court of Appeals' direction in that it intended a *de novo* calculation of attorneys' fees should be made,

rather than an adjustment of the earlier award, this Court finds that Steptoe performed 296.5 hours of services between March 17, 1978, and

Transamerica contends that it should also be allowed interest on the attorneys' fees here awarded from December 4, 1979, to compensate for the three years it has been deprived of the use of the money it has since then been clearly entitled to in some amount. Both parties have cited cases which have allowed or disallowed such interest in the particular circumstances presented, but neither has cited, nor has the Court found, any case expressly allowing interest upon attorneys' fees awarded as a "term and condition" of a Fed.R.Civ.P. 41(a)(2) voluntary dismissal.

The Court of Appeals observed that "... the purpose of the 'terms and conditions' clause is to protect a defendant from any prejudice or inconvenience that may result from a plaintiff's voluntary dismissal." 665 F.2d at 367. And if GAF has had the use of Transamerica's money for a time, Transamerica has had the use of this action as a training ground, at GAF's expense, for future litigation of asbestos disease insurance coverage cases—a fringe benefit which may ultimately prove far more valuable than any interest payment could be—particularly when the experience is gained, as here, against an equally endowed adversary represented by equally able counsel.

■ While the District of Columbia action precipitated Transamerica's employment of Steptoe & Johnson, it is clear that Transamerica has not regarded the relationship to be finitely determined by the District of Columbia proceedings alone. As the scope of the problem became apparent, Transamerica continued to rely upon Steptoe and its lead attorney to help resolve it in any jurisdiction throughout the country where it could be resolved. Mr. Mackall, already possessed of considerable expertise

in insurance matters generally, undoubtedly acquired additional knowledge as the case progressed which will be of utility in all further litigation between the parties involving the same subject matter, even if not as specifically identifiable work product filed elsewhere. The Court concludes that the purpose of the "terms and conditions" clause of Rule 41(a)(2) is best served in such cases by declining to award interest on attorneys' fees imposed pursuant thereto.

For the foregoing reasons, it is, this 7th day of December, 1982,

ORDERED, that defendant Transamerica Insurance Corporation is awarded attorneys' fees of $31,503.75, and costs of $1,579.43, without interest, in accordance with the Order of December 4, 1979.

February 12, 1979, which were devoted directly and necessarily to the defense of Transamerica in this Court which cannot be recouped by reuse of its work product in California. Of those total hours, 205.5 were expended in 1978 and 91 in 1979. The record contains no exact division of the allowable hours between Mr. Mackall and his associate. In all of 1978, however, about 70% of Transamerica's legal bills from Steptoe represented Mr. Mackall's time, and the remainder the associate's. In 1979 the

percentages were 57% and 43%, respectively. Multiplying their proportionate share of the allowable hours by their customary rates, and taking into consideration the principles articulated in *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319 (D.C.Cir.1982) the Court concludes Steptoe would be entitled to $29,508.60 in attorneys' fees pursuant to the Court's Order of December 4, 1979.