NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0040n.06

No. 10-3985

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jan 11, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| PAUL L. JONES, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| WESTERN RESERVE TRANSIT AUTHORITY, | ) | O P I N I O N |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:     MARTIN, SUHRHEINRICH, and COLE, Circuit Judges.

COLE, Circuit Judge.  Paul Jones, a former bus driver for the Western Reserve Transit Authority ("WRTA"), filed suit against WRTA for what he claims to be a violation of his civil rights.  Contending that WRTA improperly terminated his employment, Jones complains of a mixture of state and federal race and disability discrimination law violations.  WRTA, in turn, argues that Jones's poor work record, an incident in which he came close to brawling with another person while on duty, and his subsequent inability to complete anger management training necessitated its decision.  Because the district court did not abuse its discretion in denying Jones's procedural motions, and Jones fails to produce any evidence of pretext in WRTA's reason for its decision, we AFFIRM the judgments of the district court.

I.  BACKGROUND

WRTA employed Jones as a bus driver in Youngstown, Ohio, since 1987, and as a full-time driver since 1990. During his tenure, he had a number of relatively minor incidents requiring disciplinary action. In January 2006, WRTA disciplined Jones, who is black, for repeatedly referring to a co-worker as "whitey." WRTA informed Jones that if he exhibited similar conduct in the future, he would be subject to "disciplinary action, which may include termination of employment."

On April 25, 2008, Jones operated a WRTA bus and attempted to make a stop in front of a Giant Eagle grocery store. A pick-up truck parked in front of the stop obstructed Jones's approach. Jones began yelling at the truck's owner to move, and the two men began to argue, coming perilously close to fisticuffs. Jones eventually drove on, though not before calling the truck's owner a "punk," "punk-ass," and "motherfucker," and stating that once his shift was over, Jones would find the truck's owner and assault him. Unfortunately for Jones, his bus's video system caught all of this on tape. Following the incident, Giant Eagle contacted WRTA and banned Jones from the property.

WRTA did not immediately terminate Jones's employ. Rather, it gave Jones the option of completing an anger management assessment. WRTA informed Jones that he would be fired if he did not "satisfactorily complete all requirements under the assessment." There is no dispute that Jones received this information. For the next month, Jones repeatedly met with a counselor, and WRTA received updates that Jones "continue[d] to participate in an anger management course . . . ."

On August 11, 2008, the third-party administrator responsible for Jones's treatment notified WRTA that "Jones no-showed to a July 8, 2008 anger management group session." Multiple attempts to contact Jones proved unsuccessful, and the administrator made clear that "[a]t this time, Mr. Jones is not in compliance with the recommendations set forth by his counselor." Another letter,

written three days later, stated that Jones knew that "[t]here were to be 15 consecutive sessions held once a week." Acting on this information, WRTA notified Jones that due to his failure to attend the July 8 group therapy meeting, he was "immediately suspended pending a discipline hearing to consider termination of [his] employment." For his part, Jones insists that any continuing anger management sessions were completely optional.

WRTA notified Jones that pursuant to its decision at the hearing, his employment with WRTA was immediately terminated. WRTA's Director of Transportation wrote to Jones that "[i]t is unfortunate that, given the opportunity to maintain your employment with WRTA, you did not honor your agreement with WRTA and abide by the requirements" previously set forth.

Jones sued WRTA, asserting that WRTA's decision was racial or disability discrimination in violation of (1) Title VII, 42 U.S.C. § 2000e-2; (2) Ohio Revised Code §§ 4112.02 and 4112.99; and (3) Ohio public policy. He also asserted a claim of retaliation under 42 U.S.C. § 1981. Jones later amended his complaint, the only change being the replacement of the Ohio public policy claim with a claim under the Americans with Disabilities Act ("ADA").

In January of 2010, Jones filed a motion to amend his first amended complaint, alleging that he received information that the counseling program's third-party administrator was "inextricably complicit in" his termination, which somehow gave rise to a breach of a fiduciary duty owed to Jones. Jones additionally alleged state law contract and negligence claims, arising from the contract that Jones signed with WRTA to begin his counseling program. Three days later, Jones withdrew that motion, and the day after that, filed another motion to amend his complaint to remove federal claims, or, in the alternative, to dismiss the complaint without prejudice. The district court denied

both motions.  It noted that dismissal without prejudice would cause WRTA to "suffer plain legal prejudice," and that amending the complaint would be improper because the "new evidence" that Jones claims gives rise to additional claims had been known to Jones for close to three months.

WRTA then moved for summary judgment in its favor.  The district court found that Jones neither suffered from a disability nor was regarded as suffering from a disability, that Jones could not show evidence indicating that WRTA's reason for his termination was pretextual, and that Jones could not show any evidence of retaliation.  In light of this, the district granted WRTA's motion for summary judgment.  Jones filed a timely notice of appeal.

## II.  ANALYSIS

Jones contends that the district court erred in three ways.  First, the district court improperly denied his motion to dismiss his complaint without prejudice.  Next, the district court improperly denied his motion to amend his complaint to remove his federal claims.  Finally, Jones argues, the district court erred in granting summary judgment because there were genuine issues of material fact.  We discuss each of these in turn.

*A.  Jones's Motion to Dismiss Without Prejudice*

Jones first argues that the district court erred in its decision on February 26, 2010, denying Jones's motion to dismiss his complaint without prejudice under Rule 41(a)(2) of the Federal Rules of Civil Procedure.  We review a district court's decision on a Rule 41(a)(2) motion for an abuse of discretion.  *DWG Corp. v. Granada Investments, Inc.*, 962 F.2d 1201, 1202 (6th Cir. 1992).  The district court abuses its discretion when it relies on erroneous findings of fact, applies the wrong

legal standard, misapplies the correct legal standard, or makes a clear error in judgment. *Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948, 953 (6th Cir. 2009) (citation omitted).

Rule 41 governs the dismissal of civil actions, either voluntarily or involuntarily. Fed. R. Civ. P. 41. Rule 41(a)(2) provides that if the plaintiff's motion for voluntary dismissal is not filed before the defendant responds, or without the defendant's consent, then the action may be dismissed "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "[T]he purpose of Rule 41(a)(2) is to protect the nonmovant . . . from unfair treatment." *Bridgeport Music Inc.*, 583 F.3d at 953. In determining whether WRTA would have been unfairly treated, we must look to whether WRTA "would suffer plain legal prejudice" by dismissing the complaint without prejudice. *Id.* (citations and internal quotation marks omitted). The mere prospect of having to face a second lawsuit does not satisfy this standard. *Id.* Rather, we must look at "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." *Grover by Grover v. Eli Lilly and Co.*, 33 F.3d 716, 718 (6th Cir. 1994) (citations omitted). Considering the record in this case, the district court was sound in its discretion to deny Jones's motion.

All but the last factor weigh in favor of WRTA.[1]  The docket indicates that prior to the filing of this motion, WRTA's counsel participated in a telephone conference, filed at least seven procedural notices, and filed two substantive documents with the district court.  Between the filing of the motion to dismiss and the district court's decision, WRTA's counsel filed an additional twelve procedural notices and three substantive documents.  Jones does not dispute this, but instead states that WRTA's filings are completed in nearly all civil cases, and are not, by themselves, enough to satisfy this first factor.

This argument is not without merit, though it is not ultimately successful.  If WRTA's expended efforts could have been applied in a subsequent Ohio action, this factor would be Jones's to claim.  But, WRTA's efforts were calibrated to defend against state and federal discrimination claims.  As Jones's own motion to dismiss alludes to bringing suit in Ohio courts under negligence, fiduciary duty, and contract theories, and abandoning all federal claims that had been previously presented, little to none of WRTA's work could be salvaged.  *See Rosenthal v. Bridgestone/Firestone, Inc.*, 217 F. App'x 498, 502 (6th Cir. 2007) (upholding the district court's grant of a Rule 41(a)(2) motion to dismiss because much of the defendants' effort and expense would be useful in a subsequent state action).

---

[1]The district court weighed the final factor, whether the defendant had filed a motion for summary judgment, in favor of WRTA because WRTA had already started preparing a motion for summary judgment.  Because the other factors all weigh soundly in WRTA's favor, we need not reach the question of whether the preparation of a motion for summary judgment, as opposed to the filing of that motion, satisfies the last factor of the *Grover by Grover* test.

The district court also noted that WRTA had been required to file, on more than one occasion, documentation to resolve discovery disputes, suggesting that Jones was dilatory in prosecuting his action. While the record prior to the filing is not clear on this point, Jones does not dispute the district court's statements, arguing only that his decision to delay taking depositions was perhaps strategic. Yet, the new information that allegedly informed Jones's decision to file the motion to dismiss was not new; it was made known to him at a November meeting with WRTA. Rather than filing his motion to dismiss immediately, he waited three months, and eventually only filed the motion because a looming discovery deadline was about to pass. This factor, too, weighs against Jones.

Finally, Jones expressed no clear reasoning as to why the dismissal was needed. The motion, while lacking in clarity, essentially concedes that his federal claims have no merit. In fact, the only substantive discussion supporting a grant of the motion is that doing so "would be in the substantial interest of justice and judicial economy . . . ." Given the dearth of reasoning by Jones, the effort expended by WRTA in defending itself, and Jones's dilatoriness, the district court in no way abused its discretion in denying Jones's motion to dismiss.

## B. Jones's Motion for Leave to Amend His Complaint

Jones further contends that the district court erred in denying his motion for leave to amend his complaint under Rule 15(a)(2). Under Rule 15, a party may amend its pleading as a matter of course within the timeframe stipulated in Rule 15(a)(1), or outside of that timeframe "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Generally, we review a district court's denial of a motion for leave to amend a claim under Rule 15(a) for an abuse

of discretion. *Pulte Homes, Inc. v. Laborers' Intern. Union of North America*, 648 F.3d 295, 304 (6th Cir. 2011). If, however, the district court denied leave "because the amended pleading would not withstand a motion to dismiss," we review that denial de novo. *Id.* (citation and quotation marks omitted). The district court did not make such an assessment, so the former standard of review applies.

Leave to amend should be freely given when justice requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). A district court should grant the motion "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief . . . ." *Id*. But, undue delay, bad faith, dilatory motives, a failure to cure deficiencies by prior amendments, or futility weigh against the plaintiff. *Id*. Jones asserts in his motion that the factual predicate for his new state law claims was discovered via interrogatories produced on January 14, 2010. These interrogatories allegedly show that Moore Counseling and Mediation Services ("Moore") was involved in the termination decision, and that this "collusive" conduct gives rise to a fiduciary duty claim. This argument fails. WRTA informed Jones, at a case management conference on November 9, 2009, almost three months before Jones filed his motion for leave, that its decision to terminate his employment "was the result of his unsuccessful completion of the anger management therapy." In fact, Jones knew about Moore's involvement even before that. On August 14, 2008, almost a year and a half before the filing, WRTA notified Jones that "Moore Counseling has notified WRTA that [Jones is] not in compliance with the recommendations of [his] Counselor." Jones unduly delayed the filing of his motion for leave; any new claims he wanted to put forth could have been made in his original filing when he commenced the suit.

The record suggests that Jones's motion for leave was made in bad faith. Jones attempted to strip his complaint of any federal claims when he attached a proposed amended complaint to his motion, alleging only a violation of Ohio discrimination law. While we cannot be certain, there is no reason to believe that Jones was attempting anything other than making the district court decline supplemental jurisdiction under 28 U.S.C. 1367(c)(3), which permits it to dismiss a case if it "has dismissed all claims over which it has original jurisdiction . . . ." Indeed, it would be a peculiar proceeding if the district court were to continue to exercise jurisdiction over the pendent claims. Jones effectively asked the district court to dismiss his complaint and, if it did not, to grant him the ability to do indirectly what he could not do directly.

Jones's delay alone provides us with enough to determine that the district court did not abuse its discretion in denying Jones's motion for leave to amend his complaint. The Supreme Court's dictate in *Foman* requires district courts to permit leave to amend complaints in order for the plaintiff to have the opportunity to have his claims heard on the merits. Jones's strategic decisions to strip the district court of jurisdiction were surely not what the Supreme Court had in mind. *See, e.g.*, *Syme v. Rowton*, 555 F. Supp. 33, 35 (D. Mont. 1982) (denying a motion to add nondiverse defendants when the plaintiffs' primary motive was to defeat the jurisdiction of the district court).

## C. WRTA's Motion for Summary Judgment

Jones's final argument is that the district court erred in granting WRTA's motion for summary judgment. We review the district court's grant of summary judgment de novo. *Blackmore v. Kalamazoo*, 390 F.3d 890, 894-95 (6th Cir. 2004) (citation omitted). Summary judgment is proper when there is no genuine issue of material fact and the moving party, WRTA, is entitled to judgment

as a matter of law. Fed. R. Civ. P. 56(c). WRTA bears the initial burden of demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). WRTA may satisfy this burden by offering affirmative evidence that negates an element of each of Jones's claims or, as it attempts to do here, by pointing to an absence of evidence to support the non-moving party's claim. If WRTA satisfies its burden, Jones must then set forth the specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

In evaluating the evidence, we draw all reasonable inferences in favor of Jones. *Blackmore*, 390 F.3d at 895 (citing *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A mere scintilla of evidence in support of Jones's position will be insufficient for his claims to survive summary judgment. Rather, there must be enough evidence such that the jury could reasonably find for him. *Anderson*, 477 U.S. at 251.

The district court addressed each of Jones's ADA, state disability law, Title VII, state race discrimination law, and federal retaliation claims separately. We need not do the same here. Our review of each of these claims applies the familiar tripartite burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because Jones produces, at best, only indirect evidence of discrimination. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) (applying *McDonnell Douglas* to ADA claims where only indirect evidence is presented); *Hedrick v. Western Reserve Care System*, 355 F.3d 444, 452 n.4 (6th Cir. 2004) (noting that because the elements of an ADA claim and the Ohio handicap discrimination statute are identical, our analysis of the ADA claim resolves the state law claim as well); *McDonnell Douglas*, 411 U.S. at 802-804

(applying the framework to Title VII claims); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.

1992) (applying *McDonnell Douglas* to claims of discrimination under Ohio state law generally);

*Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006) (applying the framework to 42 U.S.C.

§ 1981 retaliation claims). Under *McDonnell Douglas*, once the plaintiff establishes a prima facie

case of discrimination, the defendant must produce evidence of a legitimate, non-discriminatory

reason for its actions. *McDonnell Douglas Corp.*, 411 U.S. at 802-03. At that point, the plaintiff

may only prevail if he can show, by a preponderance of the evidence, "that the legitimate reasons

offered by the defendant were not its true reasons, but were a pretext for discrimination." *Mitchell*,

964 F.2d at 584 n.6 (citation omitted).

Assuming, *arguendo*, that Jones is able to establish a prima facie case for each of his claims,

he still cannot prevail. WRTA puts forth Jones's performance record, including the April 2008

incident, as well as his failure to complete the anger management course, as legitimate and

nondiscriminatory reasons for its decision to terminate Jones's employment. Jones fails, however,

to produce any evidence that WRTA's stated reasons are pretextual. In his response to WRTA's

motion for summary judgment, Jones notes only that his affidavit identified two white co-workers

who allegedly engaged in physical altercations while on duty, and that neither colleague was

terminated or required to undergo anger management counseling. But, as the district court noted,

the circumstances surrounding the white co-workers' employment situations are wholly unexplained.

Jones does not state that these colleagues had prior incidents, as he did, that would require anger

management sessions. Rather, he only states that he believed that the co-workers were "involved

in separate physical alterations while on duty for WRTA." This allegation, without more, is simply not enough to create a genuine issue of material fact.

Jones also notes that WRTA should not have terminated his employment for missing the counseling sessions, because Jones believed the subsequent sessions to be optional. Whether this is true is irrelevant. We have adopted the honest-belief rule, precluding any inquiry as to whether the employer's decision was correct or optimal. *Michael v. Caterpillar Fin. Svcs. Corp.*, 496 F.3d 587, 598-99 (6th Cir. 2007). It is only those employment decisions based on impermissible factors, such as an employee's race or disability, that are actionable.

WRTA has provided a legitimate and nondiscriminatory reason for its decision to terminate Jones. Jones produces insufficient evidence that would permit a reasonable juror to believe that WRTA's decision was pretextual. The district court was therefore correct in granting WRTA's motion for summary judgment.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgments of the district court.